**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DEDEE MANGUM,** individually and on behalf of similarly situated persons,<br><br>                 Plaintiff,<br><br>    **v.**<br><br>**EYM PIZZA OF ILLINOIS, LLC** and **EDUARDO DIAZ**<br><br>              Defendants. | **Case No. _____**<br><br>**Jury Demanded** |

## <u>COMPLAINT</u>

Now comes Plaintiff, Deedee Mangum ("Plaintiff"), individually and on behalf of all other similarly situated delivery drivers, and brings this Complaint against Defendants EYM Pizza of Illinois, LLC and Eduardo Diaz, and alleges as follows:

1.      Defendants operate numerous Pizza Hut franchise stores. Defendants employ delivery drivers who use their own automobiles and cellular phones to deliver pizza and other food items to their customers.

2.      Defendants do not reimburse delivery drivers for the reasonably approximate costs of the business use of their vehicles. Rather Defendants maintain a policy of reimbursement rates that provides an unreasonably low rate beneath any reasonable approximation of the expenses they incur. As a result, the drivers' unreimbursed expenses cause their wages to fall below the federal minimum wage during some or all workweeks.

3.      Plaintiff brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* as a class action under Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("Illinois Wage Law") and as a class action under the Illinois Wage Payment and Collection Act 820 ILCS § 120/1 *et seq* to recover unpaid minimum wages and overtime hours and

1

unreimbursed expenses owed to herself and similarly situated delivery drivers employed by Defendants at its Pizza Hut stores.

## I.    JURISDICTION AND VENUE

4.    The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

5.    Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendants employed Plaintiff in this District, Defendants operate Pizza Hut franchise stores in this District, and a substantial part of the events giving rise to the claim herein occurred in this District.

## II.    PARTIES

6.    Defendant, EYM Pizza of Illinois, LLC is a foreign Limited Liability Company and may be served via its registered agent, Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

7.    Defendant, Eduardo Diaz is individually liable because, during the relevant times, he was an owner of substantial interests in EYM Pizza, served as officer of the entity, and held managerial responsibilities and substantial control over terms and conditions of drivers' work as he held the power to hire and fire, supervised and controlled work schedules and/or conditions of employment, determined rates and methods of pay and/or expense reimbursements, and maintained employment records and/or held control over employment records.

8.    Defendant Diaz may be served at 450 E John Carpenter Fwy #100, Irving, TX 75062, or wherever he may be found.

9.    Plaintiff Deedee Mangum was employed by Defendants from approximately 2016 to approximately May 27, 2022 as a delivery driver at Defendants' Pizza Hut stores located in Crete, Illinois; Country Club Hills, Illinois; Manteno, Illinois; and Monee, Illinois stores within

this District.  Plaintiff's consent to pursue this claim under the FLSA is attached to this Complaint as "Exhibit 1."

### III.   GENERAL ALLEGATIONS

### LEGAL STANDARDS APPLICABLE TO DEFENDANTS' EXPENSE REIMBURSEMENT VIOLATIONS

10.     The FLSA prohibits any "kickback" of job-related expenses which would cut into the minimum wage or overtime otherwise required to be paid under the Act. Specifically, 29 C.F.R. § 531.35 provides:

Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the **minimum or overtime wages** required to be paid him under the Act. (emphasis added).

11.     Pizza delivery drivers' vehicle expenses are tools of the trade. In the pizza delivery context, the cost associated with delivering food for an employer is a 'kickback' to the employer that must be fully reimbursed, lest a minimum wage violation be triggered. A pizza delivery business's need for vehicles and cellular phones to deliver their pizzas is directly incidental to its business.

12.     The relevant regulation governing such "kickbacks" does not define a methodology for calculating mileage rates or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work. *See* 29 C.F.R. § 531.35. "In light of this ambiguity, Courts have adopted the methodology detailed in the Department of Labor's Field Operations Handbook. Based on the DOL Handbook, district courts and arbitrators

repeatedly hold that pizza delivery drivers are owed the difference between the reimbursements

provided and the IRS rate when the employer fails to keep records of their actual expenses. *Burton*

*v. DRAS Partners, LLC,* No. 2019-CV-02949, 2019 WL 5550579, at *3 (N.D. Ill. Oct. 27, 2019)

Specifically, the DOL Handbook's rule is:

> **30c15 Car expenses: employee's use of personal car on employer's business.** In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.
>
> (a) As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a prorate basis.

13.     The Handbook standard "giv[es] employers a choice: either (1) keep records of

delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS

standard business mileage rate." *Id.*

### LEGAL STANDARDS APPLICABLE TO EYM PIZZA OF ILLINOIS' TIP CREDIT VIOLATIONS

14.     Under applicable law, in certain circumstances, it is permissible for an employer to

take a tip credit and pay its employees less than the mandated minimum wage, provided that the

employee's tips received from customers plus the cash wage paid by the employer equals at least

the applicable minimum wage. However, in order to take advantage of these wage provisions, the

employer must meet certain strict notification requirements.

15.     According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped

Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

4

16.     As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

17.     First, the employer must notify the employee of the amount of the cash wage the employer is paying the tipped employee and that amount must equal at least $2.13 per hour.

18.     Second, the employer must notify the tipped employee of the amount the employer is claiming as a tip credit. In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

19.     Third, the employer must inform the tipped employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee. In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

20.     Fourth, the employer must notify the tipped employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

21.     Finally, the tipped employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

22.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[1] If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

---

[1] Courts have strictly construed this notification requirement. Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

23.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference. Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

24.     The tip credit may also be applied to an employer's overtime obligations. *See* 29 C.F.R. § 531.60. "To illustrate how this works, an employee working overtime must be paid $10.88 per hour—one and one-half times $7.25." *E.g. Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1033 (4th Cir. 2020). "The employer can still use the $5.12 tip credit but not more, meaning the hourly wage for overtime must be $5.76- $10.88 minus a $5.12 tip credit." *Id.*

## DEFENDANTS' BUSINESS

25.     Defendants own and operate numerous Pizza Hut franchise stores including stores within this District and this Division.

26.     Eduardo Diaz is an owner, officer and director of EYM Pizza of Illinois, LLC.

27.     In this capacity, Mr. Diaz put the pay scheme at issue in place, has overseen and enforced Defendants' pay practices, and is, therefore, individually liable for the violations at issue.

28.     Defendants' Pizza Hut stores employ delivery drivers who all have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces.

## DEFENDANTS' REIMBURSEMENT POLICY

29.     Defendants require their delivery drivers to maintain and pay for safe, legally-operable, and insured automobiles when delivering pizza and other food items.

30.     Defendants' delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering pizza and other food items for the primary benefit of Defendants.

6

31. Defendants' delivery driver reimbursement policy reimburses drivers on a per-delivery basis, but the per-delivery reimbursement equates to below the IRS business mileage reimbursement rate or any other reasonable approximation of the cost to own and operate a motor vehicle. This policy applies to all of Defendants' delivery drivers.

32. The result of Defendants' delivery driver reimbursement policy is a reimbursement of much less than a reasonable approximation of its drivers' automobile expenses.

33. During the applicable FLSA limitations period, the IRS business mileage reimbursement rate ranged between $.54 and $.58.5 per mile. Likewise, AAA has determined that the average cost of owning and operating a vehicle ranged between $.48 and $.66 per mile for drivers who drive 15,000 miles per year in 2021. https://newsroom.aaa.com/wp-content/uploads/2021/08/2021-YDC-Brochure-Live.pdf (last visited November 5, 2022). These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for use in delivering pizzas.

34. However, the driving conditions associated with the pizza delivery business cause even more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Defendants' delivery drivers further experience lower gas mileage and higher repair costs than the average driver used to determine the average cost of owning and operating a vehicle described above due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

35. Defendants' reimbursement policy does not reimburse delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, and thus Defendants uniformly fail to reimburse its delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendants' benefit.

36. Defendants failed to reimburse delivery drivers at all for their cellular phones,

7

which was required for the drivers to communicate and navigate during their deliveries.

37.     Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants such that the hourly wages it pays to Plaintiff and Defendants' other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

38.     Defendants fail to reasonably approximate the amount of their drivers' automobile expenses to such an extent that its drivers' net wages are diminished beneath the federal minimum wage requirements.

39.     In sum, Defendants' reimbursement policy and methodology fail to reflect the realities of delivery drivers' automobile expenses and fails to reimburse at all for the delivery drivers' cellular phone use.

## DEFENDANTS' FAILURE TO REASONABLY REIMBURSE AUTOMOBILE EXPENSES AND CELLULAR PHONES CAUSES MINIMUM WAGE VIOLATIONS

40.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the federal minimum wage.

41.     Plaintiff was paid an hourly rate less than the applicable minimum wage during her employment as a delivery driver with Defendants.

42.     The federal minimum wage has been $7.25 per hour since July 24, 2009. The Illinois minimum wage has been $12.00 per hour since January 1, 2022. The City of Chicago's current minimum wage is $15.40 per hour.

43.     During the time Plaintiff worked for Defendants as a delivery driver, she was reimbursed approximately 50% of the IRS business mileage reimbursement rate per mile and on average drove 4-6 miles per delivery.

44.      During the relevant time period, the IRS business mileage reimbursement rate ranged between $.54 and $.585 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-

Rates. Using the lowest IRS rate and the highest rate per mile plaintiff was making per mile driven ($.30 per mile) in effect during that period as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased her net wages by at least $.24 ($.54 - $.30) per mile. Furthermore, Plaintiff was often reimbursed at a lower rate than $.30 or not reimbursed at all.

45.     All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; incurred similar cellular phone expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

46.     Because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

47.     While the amount of Defendants' actual reimbursements per delivery may vary over time, Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of their other Pizza Hut stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile and cellular phone costs incurred are relatively consistent between time and region.

48.     Defendants' low reimbursement rates were a frequent complaint of Defendants' delivery drivers, which resulted in discussions with management, yet Defendants continued to reimburse at a rate much less than any reasonable approximation of delivery drivers' expenses. In fact, there were times that Defendants would not pay Plaintiff and other Drivers anything for mileage and Defendants did not pay at all for cellular phone use.

49.     The net effect of Defendants' flawed reimbursement policy is that Defendants have willfully failed to pay the federal minimum wage to their delivery drivers. Defendants thereby enjoy ill-gained profits at the expense of its employees.

#### IV.    CLASS AND COLLECTIVE ACTION ALLEGATIONS

50.     Plaintiff brings this FLSA claim as an "opt-in" collective action on behalf of similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b).

51.     The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

52.     Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging Defendants' practice of failing to pay employees federal minimum wage. The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential class members may be notified of the pendency of this action via mail and electronic means.

53.     Plaintiff and all of Defendants' delivery drivers are similarly situated in that:

    a.  They have worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers;

    b.  They have delivered pizza and food items using automobiles not owned or maintained by Defendants;

    c.  Defendants required them to maintain these automobiles in a safe, legally-operable, and insured condition;

    d.  They incurred costs for automobile expenses and cellular phone expenses while delivering pizzas and food items for the primary benefit of Defendants;

    e.  They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

    f.  They were subject to the same pay policies and practices of Defendants;

    g.  They were subject to the same delivery driver reimbursement policy that under-estimates automobile expenses per mile and did not reimburse for cellular phone expenses, and thereby systematically deprived of

reasonably approximate reimbursements, resulting in wages below the

federal minimum wage in some or all workweeks;

h. They were reimbursed similar set amounts of automobile expenses per

delivery; and,

i. They were paid at or near the federal minimum wage before deducting

unreimbursed business expenses.

54.     Plaintiff brings Count I and Count II as a collective action on behalf of herself

and the following persons (the "Collective"):

> All current and former delivery drivers employed by Defendants
> since the date three years preceding the filing of this Complaint.

55.     Plaintiff brings Count III as a class action pursuant to Fed. R. Civ. P. 23, on

behalf of herself and as the Class Representative of the following persons (the "IMWL Class"):

> All current and former delivery drivers employed by Defendants in
> Illinois since the date three years preceding the filing of this
> Complaint.

56.     Plaintiff brings Count IV as a class action pursuant to Fed. R. Civ. P. 23, on

behalf of herself and as the Class Representative of the following persons (the "IWPCA Class"):

> All current and former delivery drivers employed by Defendants in
> Illinois since the date ten years preceding the filing of this
> Complaint.

57.     The IMWL Class and IWPCA Class will be collectively referenced herein as "The

Class."

58.     The state law claims, if certified for class-wide treatment, are brought on behalf of

all similarly situated persons who do not opt-out of the Class.

59.     The Class satisfies the numerosity standard as it consists of hundreds of persons

who are geographically dispersed and, therefore, joinder of all Class members in a single action

is impracticable.

60.     Questions of fact and law common to the Class predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' actions include, without limitation:

      a. Whether Defendants failed to pay Class members the minimum wage required by Illinois law,

      b. Whether Defendants failed to reasonably reimburse Class members for using their own vehicles to deliver Defendants' pizzas and other food items,

      c. Whether Defendants failed to reasonably reimburse Class members for using their own phones in connection with delivering Defendants' pizzas and other food items,

      d. Whether Defendants' formula and/or methodology used to calculate the payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the Class members,

      e. Whether Defendants failed to keep accurate records of deductions from Class members' wages in violation of Illinois law, and

      f. Whether Defendants failed to reimburse Plaintiff and the Putative Plaintiffs for business expenses;

61.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

62.     Plaintiff's claim is typical of those of the Class in that:

      a. Plaintiff and the Class have worked as delivery drivers for Defendants

delivering pizza and other food items to Defendants' customers;

b. Plaintiff and the Class delivered pizza and food items using automobiles not owned or maintained by Defendants;

c. Defendants required Plaintiff and the Class to maintain these automobiles in a safe, legally-operable, and insured condition;

d. Plaintiff and the Class incurred costs for automobile expenses and cellular phone expenses while delivering pizzas and food items for the primary benefit of Defendants;

e. Plaintiff and the Class were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. Plaintiff and the Class were subject to the same pay policies and practices of Defendants;

g. Plaintiff and the Class were subject to the same delivery driver reimbursement policy that underestimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

h. Plaintiff and the Class were reimbursed similar set amounts of automobile expenses per delivery;

i. Plaintiff and the Class were not reimbursed any amount of reasonable expense for cellular phone use in connection with delivering Defendants' pizzas and other food items; and

j. Plaintiff and the Class were paid at or near Illinois minimum wage before deducting unreimbursed business expenses.

63.     A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Class.

64.     Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the members of the Class she seeks to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

65.     Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Class have little interest in individually controlling the prosecution of separate class actions, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Class, and there are no material difficulties impairing the management of a class action.

66.     It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

## V.      LEGAL CLAIMS

### Count I
### Violation of the Fair Labor Standards Act
### Minimum Wage Violation
### On behalf of Plaintiff and FLSA Collective

67.     Plaintiff reasserts and re-alleges the allegations set forth above.

68.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of

goods for commerce. 29 U.S.C. § 206(a).

69.    Defendants are subject to the FLSA's minimum wage requirements because it is an enterprise engaged in interstate commerce, and its employees are engaged in commerce.

70.    At all relevant times herein, Plaintiff and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

71.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

72.    Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

73.    As alleged herein, Defendants have reimbursed delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes these employees' wages beneath the federal minimum wage.

74.    As alleged herein, Defendants have reimbursed delivery drivers less than the reasonable approximate amount of their cellular phone expenses to such an extent that it diminishes these employees' wages beneath the federal minimum wage.

75.    Defendants knew or should have known that their pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the federal minimum wage.

76.    Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated employees.

77.    Plaintiff and all similarly situated delivery drivers are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendants' stores.

78.    Plaintiff and all similarly situated employees are entitled to damages equal to the

minimum wage minus actual wages received after deducting reasonably approximated automobile and cellular phone expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

79. Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants are not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

80. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**Count II**
**Violation of the Fair Labor Standards Act**
**Tip Credit Notice Violation**
**On behalf of Plaintiff and the FLSA Collective**

81. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

82. According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

83. As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

84. First, the employer must notify the employee of the amount of the cash wage the employer is paying the tipped employee and that amount must equal at least $2.13 per hour.

16

85.     Second, the employer must notify the tipped employee of the amount the employer is claiming as a tip credit. In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

86.     Third, the employer must inform the tipped employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee. In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

87.     Fourth, the employer must notify the tipped employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

88.     Finally, the tipped employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

89.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference. Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

90.     At all relevant times, Defendants failed to ensure that Plaintiff and the FLSA Collective were properly notified and informed of all of the legal requirements which must be met in order to take a tip credit against delivery drivers' wages.

91.     Despite Plaintiff and the FLSA Collective earning less than federal or state minimum wage, Defendants did not inform Plaintiff and the FLSA Collective that as tipped employees, their cash wage must be equal to at least $2.13 per hour.

92.     Despite Plaintiff and the FLSA Collective earning less than federal or state minimum wage, Defendants did not inform Plaintiff and the FLSA Collective that Defendants will be taking a tip credit against their wages not to exceed $5.12 per hour.

93.     Despite Plaintiff and the FLSA Collective earning less than federal or state minimum wage, Defendants did not inform Plaintiff and the FLSA Collective that the tip credit claimed cannot exceed the actual amount of tips received by the employee. Defendants did not inform Plaintiff and the FLSA Collective that they must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

94.     Despite Plaintiff and the FLSA Collective earning less than federal or state minimum wage, Defendants did not inform Plaintiff and the FLSA Collective that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

95.     Despite Plaintiff and the FLSA Collective earning less than federal or state minimum wage, Defendants did not inform Plaintiff and the FLSA Collective that the tip credit will not apply unless the employee has been informed of these provisions.

96.     Moreover, by making Plaintiff and the FLSA Collective pay for job-related expenses as described herein, Defendants' did not ensure that Plaintiff and the FLSA Collective retain all of their tips, thereby forfeiting the ability to take a tip credit against Plaintiff and the FLSA Collective's wages.

97.     As a result, Defendants have violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206.

98.     As such, Defendants have willfully violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206.

99.     As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Collective, are entitled to all unpaid minimum wages to be proven at trial, an additional amount equal to all such unpaid minimum wages as liquidated damages, reasonable attorneys' fees, and costs.

## Count III
### Violations of Illinois Minimum Wage Law
### 820 ILCS §105/1 *et. seq.*
### On behalf of the IMWL Class

100.    Plaintiff reasserts and re-alleges the allegations set forth above.

101.    At all relevant times, Defendants have been and continue to be an "employer" within the meaning of Illinois Wage Law. 820 ILCS §105/3.

102.    At all relevant times, Defendants have employed, and continue to employ, "employees", including Plaintiff, within the meaning of Illinois Wage Law 820 ILCS §105/3.

103.    Plaintiff was an employee of Defendants within the meaning of Illinois Wage Law 820 ILCS §105/3.

104.    Pursuant to Illinois Minimum Wage Law 820 ILCS §105/2 *et seq.*, the Defendants were required to pay Plaintiff and the Putative Plaintiffs all wages, when due, for all hours of work at hourly rates which exceeded the minimum wage rate under the FLSA on their regular pay date.

105.    Defendants were required to provide employees with advanced notice for wage deductions permissible by and in compliance with Illinois Wage Law.

106.    Defendants failed to pay Plaintiff and the Putative Plaintiffs reimbursements for travel expenses and cellular phone expenses "as other amounts promised" under Illinois Wage Law and thus failed to comply with this statute and its accompanying administrative code. 820 ILCS §105/2 *et seq.*

107.    The foregoing conduct, as alleged, constitutes willful violations of the Illinois Minimum Wage Act. *Id.*

108.    As set forth above, the Plaintiff and the Putative IMWL Plaintiffs have sustained losses and lost compensation as a proximate result of Defendants' violations.  Accordingly, Plaintiff on behalf of herself and the Putative Plaintiffs, seek damages in the amount of their unpaid earned compensation, liquidated damages, plus interest at the legal rate set forth in the Illinois Minimum

Wage Act 820 ILCS §105/12, *et seq.* from the date each amount came due as provided by Illinois Wage Law.

109.    As a result of the foregoing conduct, as alleged, Defendants have failed to pay wages due under Illinois Wage Law and the FLSA, thereby violating, and continuing to violate, Illinois Wage Law.  As described above, these violations were committed knowingly, willfully and with reckless disregard of applicable law. 820 ILCS §105/12.

110.    Plaintiff, on behalf of herself and the IMWL Class, seeks to recover attorneys' fees as provided by the Illinois Minimum Wage Act. *Id*

**COUNT IV**
**IWPCA**
**Unreimbursed Expenses**
**(On behalf of the IWPCA Class)**

111.    Plaintiff and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

112.    Under the IWPCA, "[a]n employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 ILCS 115/9.5(a).

113.    Plaintiff and the IWPCA Class Members have incurred unreimbursed expenses related to their deliveries, including expenses related to their cellular phones and automobiles.

114.    As part of their business model, Defendants require Plaintiff and the Class Members to provide automobiles and cellular phones during the course of their work as delivery drivers.

115.    Moreover, Plaintiff and the Class Members are responsible for the cost or repair of their automobiles and cellular phones. Defendants require Plaintiff and the Class Members to solely bear the entire cost of such equipment, supplies, repairs, and replacement equipment.

116.    Defendants did not reimburse Plaintiff and the Class Members for their cellular phone expenses whatsoever and reimbursed only about half of the Plaintiff's and the Class Members'

automobile expenses.

117. Although at this stage, Plaintiff and the Class Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Class Members believe that such information will become available during the course of discovery.

118. Defendants knew that – or acted with reckless disregard as to whether – their refusal or failure to properly compensate Plaintiff and the Class Members for such business expenses would violate the IWPCA, and Defendants were aware of the IWPCA's requirements. As such, Defendants' conduct constitutes a willful violation of the IWPCA.

119. Plaintiff and the Class Members are therefore entitled to compensation for their unreimbursed cellular phone and automobile expenses, to be proven at trial, plus statutory damages, liquidated damages, and interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Deedee Mangum, individually, and on behalf of all other similarly situated persons, requests that this Court grant the following relief in Plaintiff's, the Collective Members' and the Class Members' favor, and against Defendants:

A. For the Court to declare and find that the Defendants committed one or more of the following acts:

    i. willfully violated the minimum wage provisions of the FLSA, 29 U.S.C. § 207;

    ii. willfully violated the minimum wage provisions of the IMWL § 105/4(a);

    iii. violated the provisions of the IWPCA §115/9.5(a).

B. For the Court to award damages in the amounts of all unpaid minimum wages due and owing to Plaintiff, the Collective Members and the Class Members;

C. For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial;

D.      For the Court to award prejudgment and post-judgment interest on any damages awarded;

E.      For the Court to award all statutory damages, interest, liquidated damages, penalties, attorney fees and costs owed to Plaintiff and the Class Members under the IMWL and IWPCA.

F.      For the Court to award Plaintiff's and the Collective Members' liquidated damages and reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth in this Complaint;

G.      For the Court to provide a reasonable incentive award for Plaintiff to compensate her for the time she spent attempting to recover wages for the Collective Members and for the risks she took in doing so; and

H.      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, the FLSA Collective, the IMWL Class, and the IWPCA Class hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

DATED:  November 11, 2022

Respectfully submitted,

/s/ Michael L. Fradin
Michael L. Fradin, Esq. 6289502
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

By: /s/ James L. Simon
James L. Simon (pro hac vice forthcoming)
SIMON LAW CO.

22

5000 Rockside Road
Liberty Plaza – Suite 520
Independence, OH 44131
Telephone: (216) 816-8696
Email: james@simonsayspay.com